**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMUEL MORGAN,<br><br>               Plaintiff,<br><br>    v.<br><br><br>SUNWORKS, INC., CHARLES F. CARGILE, DANIEL GROSS, JUDITH HALL, RHONE RESCH, and STANLEY SPEER,<br><br><br>               Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Samuel Morgan ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Sunworks, Inc. ("Sunworks" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Sunworks and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Sunworks and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Peck Company Holdings, Inc. ("Peck") (the "Proposed Transaction").

2.      On August 10, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Peck.  Pursuant to the terms of the Merger Agreement, Peck Mercury, Inc. ("Merger Sub"), a wholly-owned subsidiary of Peck, will merge with and into Sunworks, with Sunworks surviving the merger as a wholly-owned subsidiary of Peck. As a result of the Proposed Transaction, each share of Sunworks common stock issued and outstanding immediately prior to the effective time of the Merger (the "Effective Time"), except for certain specified shares, will be converted into the right to receive 0.185171 (the "Exchange Ratio") fully paid and nonassessable shares of Peck common stock.

3.      The implied range of per share consideration to be received by the Company's shareholders is $0.69 to $0.79 per share (the "Merger Consideration").

4.      On October 15, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Sunworks and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed

Transaction unless and until the material information discussed below is disclosed to Sunworks shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Sunworks shares.

10. Defendant Sunworks is incorporated under the laws of Delaware and has its principal executive offices located at 1030 Winding Creek Road, Suite 100, Roseville, California 95678. The Company's common stock trades on the NASDAQ under the symbol "SUNW."

11.     Defendant Charles F. Cargile ("Cargile") was Sunworks' Chief Executive Officer until August 21, 2020 and has been the Company's Chairman of the Board at all times during the relevant time period.

12.     Defendant Daniel Gross ("Gross") is and has been a director of Sunworks at all times during the relevant time period.

13.     Defendant Judith Hall ("Hall") is and has been a director of Sunworks at all times during the relevant time period.

14.     Defendant Rhone Resch ("Resch") is and has been a director of Sunworks at all times during the relevant time period.

15.     Defendant Stanley Speer ("Speer") is and has been a director of Sunworks at all times during the relevant time period.

16.     Defendants Cargile, Gross, Hall, Resch, and Speer are collectively referred to herein as the "Individual Defendants."

17.     The Individual Defendants, along with Defendant Sunworks, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

18.     Sunworks is a provider of high-performance solar power systems with a presence throughout the United States. Sunworks offers solutions for customers in a wide range of industries including agricultural, commercial and industrial, state and federal, public works, and residential. Sunworks is a member of the Solar Energy Industries Association (SEIA).

<u>**The Company Announces the Proposed Transaction**</u>

19.     On August 10, 2020, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:


OUTH BURLINGTON, Vt. and ROSEVILLE, Calif., Aug. 10, 2020 (GLOBE
NEWSWIRE) -- The Peck Company Holdings, Inc. (NASDAQ: **PECK**) (
"Peck"), a leading commercial solar engineering, procurement and construction
(EPC) company and Sunworks, Inc. (NASDAQ: **SUNW**) ("Sunworks"), a
provider of solar power solutions for agriculture, commercial and industrial
("ACI"), public works and residential markets, today announced that they have
entered into a definitive agreement under which Peck will acquire Sunworks in an
all-stock transaction, pursuant to which each share of Sunworks common stock
will be exchanged for 0.185171 shares of Peck common stock (subject to certain
adjustments). Assuming no adjustments, Sunworks' stockholders would receive
an aggregate of approximately 3,079,207 shares of Peck common stock,
representing approximately 36.54% of Peck common stock outstanding after the
merger.

**Merger Rationale and Highlights**

- Combination creates a national leader with a coast-to-coast presence poised to
  capitalize on significant cost synergies.
- Improves scale and strengthens national presence, with pro forma revenue of $88
  million if the companies had been combined in 2019, and a combined backlog of
  $76.8 million if the companies had been combined as of June 30, 2020.
- Management has identified approximately $6 million in anticipated annualized
  cost synergies, including supply chain management leverage, redundant public
  company costs and various operating expenses.
- The transaction is expected to be accretive to earnings and free cash flow after
  integration synergies have been implemented.
- Combined company will have significantly expanded addressable market to
  leverage Sunworks' core capabilities in agriculture and public works.
- Combination leverages Peck's strategic partnership with GreenBond Advisors to
  provide project development and financing to fuel growth and solar project
  ownership improving the conversion of Sunworks' pipeline and expanding its
  addressable market.
- Peck and Sunworks installed a combined 62,973kW in 2019, which would rank
  41st overall and would be the 16th largest EPC contractor based on the latest Sun
  Power World ranking list.

**Management Commentary**

Jeffrey Peck, Chairman of the Board and Chief Executive Officer of Peck, commented, "This is a transformational combination, leveraging the respective strengths of the two organizations and creating a national leader in the fast-growing and resilient solar energy industry. It provides Peck expansion, scale, an enhanced financial profile and a stronger platform from which we can continue to build more solar projects. Our integration with Sunworks will extend our presence to the west coast and broaden our offerings to agriculture and public works. The transaction solidifies our three-pronged growth strategy that we announced a year ago when we listed on Nasdaq through a SPAC merger. Since we have been public, we (1) delivered organic growth of revenue from $16 million to $28 million in the first year, (2) partnered with GreenBond Advisors to access capital that provides EPC revenue as well as asset ownership in the solar projects we build for the partnership, and now (3) we are delivering on the third prong of our strategy with an exciting accretive acquisition. We have been focused on executing these important initiatives for our shareholders and expect the acquisition of Sunworks to provide many more opportunities for long term growth and profitability."

Chuck Cargile, Chairman of the Board and Chief Executive Officer of Sunworks, added, "By joining with Peck, our vision for spreading clean solar energy throughout the U.S. is amplified and expanded. Peck has demonstrated the ability to grow revenue and maintain profitability, and we believe that the combination of our teams, customers, projects and partners will materially accelerate revenue growth and earnings. Peck's strong partnership with GreenBond Advisors will allow us to offer financing to a broader range of customers and increase our addressable market. Additionally, our expanded scale will enable us to source solar panels and equipment through Peck's established relationships at lower costs, benefiting our profit margins. Being part of Peck's platform is exciting, and in the best interest of Sunworks shareholders, customers, business partners and employees."

**Transaction Details**

The transaction is expected to close during the fourth quarter of 2020, subject to approval by shareholders of both companies and other customary closing conditions.

The Board of Directors of Peck and Sunworks have each unanimously voted in favor of the definitive transaction agreement.

As part of the agreement, after the transaction closes, Jeff Peck will continue as Chairman of the Board and Chief Executive Officer of the combined company. The Board of Directors of the combined company will be comprised of four members of the Peck Board of Directors and three members appointed by the Sunworks Board of Directors. Because the combined company will be in competition with SunPower Corporation in some markets, Doug Rose, who is also a Vice President at SunPower Corporation, has resigned from the Board of Directors of Peck to avoid conflicts of interests.

Roth Capital will be acting as financial advisor to Peck and Merritt and Merritt is serving as its legal counsel.

Holthouse Carlin & Van Trigt LLP is acting as financial advisor to Sunworks and Stradling Yocca Carlson & Rauth, P.C. is acting as its legal counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

20.     On October 1, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

21.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

22.     The Proxy Statement fails to disclose any financial projections for the Company. Disclosure of the such information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion, which it created following review of various materials, including "internal financial projections" prepared by the management of the Company.

**Material False and Misleading Statements or Material**
**<u>Misrepresentations or Omissions Regarding Holthouse's Financial Opinion</u>**

23.     The Proxy Statement contains the financial analyses and opinion of Holthouse Carlin & Van Trigt LLP ("Holthouse") concerning the Proposed Transaction, but fails to provide material information concerning such.

24.     With respect to Holthouse's *Selected Precedent M&A Transactions Analysis*, the Proxy Statement notes that Holthouse "observed overall low to high transaction value to revenue multiples and transaction value to EBITDA multiples of the selected precedent M&A transactions of 0.06x to 1.13x (with a mean of 0.59x and median of 0.63x), and 4.3x to 19.7x (with a mean of 12.3x and a median of 9.8x)." Based off of that information, Holthouse then "derived a range of multiples of 0.15x to 0.20x based on the transaction value to revenue multiples based on the last 12 months ended June 30, 2020," resulting in "an implied per share reference range from its selected precedent M&A transactions analysis of $0.60 to $0.76 per share." This reference range was below the mean and media range implied by Holthouse's analysis, yet the Proxy Statement fails to disclose any basis for the application of such reduced reference ranges.

25.     Next, the Proxy Statement notes that the Company "paid another division of [Holthouse] a flat fee for performing a quality of earnings analysis on Peck," and that "Peck's management prepared and provided to the Peck [b]oard, members of Sunworks management and the Sunworks Board, estimates of cost and revenue synergies and other pro forma effects,

including the costs to achieve such synergies and other pro forma effects[.]" However, the Proxy Statement fails to disclose this information to the Company's shareholders.

26.     Lastly, the Proxy Statement fails to disclose what previous work Holthouse has done for the parties to the Proposed Transaction, as well as any compensation earned as a result of suck work done for the parties to the Proposed Transaction.

27.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

28.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

29.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

30.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

31.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

32.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

33.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

34.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

35.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

36.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

37.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

38.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of Sunworks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sunworks, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

43.     In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 19, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*